# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **GWENDOLYN JOYCE REID,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION** |
| | ) | |
| **v.** | ) | **No. 11-1023-JWL** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a partially favorable decision of the Commissioner of Social Security (hereinafter Commissioner) awarding disability insurance benefits (DIB) and supplemental security income (SSI) beginning June 1, 2008, under sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social Security Act. 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act). Plaintiff complains that the Commissioner did not find disability beginning January 1, 2006 as was alleged in Plaintiff's applications. Finding no error, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

## I.      Background

Plaintiff applied for both DIB and SSI in August 2006, alleging her disability began January 1, 2006.  (R. 14, 131-41).  The applications were denied initially and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge (ALJ).  (R. 14, 61-64, 82).  Plaintiff's request was granted, and Plaintiff appeared with a non-attorney representative, Ms. Lenora L. Fairbank, for a hearing before ALJ Robert J. Burbank on September 16, 2008.  (R. 14, 27).  A vocational expert also appeared at the hearing, but testimony was taken only from Plaintiff.  (R. 14, 27-60).

On January 22, 2009, ALJ Burbank issued his decision finding that because of a back injury in June 2008, Plaintiff's spinal disorder met the criteria of Listing 1.04, and he awarded disability beginning June 1, 2008.  (R. 14-26).  The ALJ also found that before June 1, 2008 Plaintiff's impairments or combination of impairments did not meet or medically equal any impairment in the Listing of Impairments.  (R. 16-19).  He found that Plaintiff was able to perform the full range of sedentary work for the period between January 1, 2006 and May 31, 2008, and that although she was unable to perform any of her past relevant work, there were jobs in significant numbers in the economy that Plaintiff was able to perform.  (R. 19-25).  Therefore the ALJ denied benefits for the period of time from January 1, 2006 through May 31, 2008.  (R. 25-26).

Plaintiff disagreed with the disability onset date determined by the ALJ and requested Appeals Council review.  (R. 8-9).  The Appeals Council found no reason to review the decision, and denied Plaintiff's request.  (R. 1-3).  Therefore, the ALJ's

decision is the final decision of the Commissioner. (R. 1); Blea v. Barnhart, 466 F.3d 903, 908 (10th Cir. 2006). Plaintiff now seeks judicial review. (Doc. 1).

## II. Legal Standard

The court's jurisdiction and review are guided by the Act. Weinberger v. Salfi, 422 U.S. 749, 763 (1975) (citing 42 U.S.C. § 405(g)); Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009) (same); Brandtner v. Dep't of Health and Human Servs., 150 F.3d 1306, 1307 (10th Cir. 1998) (sole jurisdictional basis in social security cases is 42 U.S.C. § 405(g)). Section 405(g) of the Act provides for review of a final decision of the Commissioner made after a hearing in which the plaintiff was a party. It also provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the factual findings are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but is less than a preponderance; it is such evidence as a reasonable mind might accept to support a conclusion. Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395

F.3d 1168, 1172 (10th Cir. 2005).  Whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual can establish that she has a physical or mental impairment which prevents her from engaging in any substantial gainful activity, and which is expected to result in death or to last for a continuous period of at least twelve months.  Thompson v. Sullivan, 987 F.2d 1482, 1486 (10th Cir. 1993) (citing 42 U.S.C. § 423(d)); see also, Knipe v. Heckler, 755 F.2d 141, 145 (10th Cir. 1985) (quoting identical definitions of a disabled individual from both 42 U.S.C. §§ 423(d)(1) and 1382c(a)(3)(A));  accord, Lax, 489 F.3d at 1084 (citing 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).  The claimant's impairments must be of such severity that she is not only unable to perform her past relevant work, but cannot, considering her age, education, and work experience, engage in any other substantial gainful work existing in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner uses a five-step sequential process to evaluate disability.  20 C.F.R. §§ 404.1520, 416.920 (2008); Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting

Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC).  20 C.F.R. §§ 404.1520(e), 416.920(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the sequential process-- determining whether claimant can perform her past relevant work; and whether, when considering vocational factors of age, education, and work experience, claimant is able to perform other work.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant work.  Blea, 466 F.3d at 907; accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy within Plaintiff's capability. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff claims that the ALJ's decision is not supported by substantial evidence; that the ALJ did not perform a function-by-function assessment of Plaintiff's capabilities, but merely made a summary conclusion that she can perform the full range of sedentary

work; and that the ALJ improperly weighed the treating source opinion of Dr. Shaver.

The Commissioner argues that the ALJ properly considered the medical opinions,

including Dr. Shaver's opinion; that the ALJ properly assessed Plaintiff with the RFC for

a full range of sedentary work, which is a sufficiently definite RFC; and that substantial

record evidence supports the decision.  The court finds no error in the Commissioner's

decision.  The court addresses the issues presented here in the order they would be

reached in applying the sequential evaluation process, and begins with the ALJ's

evaluation of Dr. Shaver's treating source opinion.

## III.    Evaluation of the Treating Source Opinion

Plaintiff's allegations of error in the evaluation of Dr. Shaver's opinion are not

entirely clear.  Plaintiff notes that the ALJ summarized Dr. Shaver's opinions in his

decision, and then quotes two portions of the ALJ's analysis.  (Pl. Br. 10-11) (citing (R.

22); and quoting (R. 23)).  Next, she notes that Dr. Shaver diagnosed Plaintiff with

systemic lupus erythematosus and fibromyalgia, and points to record evidence that a

consultative physician noted that Plaintiff's cooperation was maximum and that Plaintiff

had severe difficulty squatting and rising from the sitting position.  Id. at 11 (citing (R.

318, 319, 260, 261)).  She also stated that "Dr. Shaver's treatment notes indicate that

plaintiff's complaints of pain were 'consistent with previous visits.'"  Id. (quotation marks

in Plaintiff's Brief, but without citation to the record).  The purpose of providing this

background information is not clear, because Plaintiff does not make any argument that

this information shows error in the ALJ's evaluation of Dr. Shaver's opinion.  To the extent it may be an invitation to the court to reweigh the evidence and substitute its judgment for that of the agency, that is contrary to the standard to be applied, and the court will not do so.  Bowman, 511 F.3d at 1272 (court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency").

The court discerns in Plaintiff's brief (after the initial summary discussed above) three allegations of error regarding the evaluation of Dr. Shaver's opinion.  First, Plaintiff asserts that the ALJ accorded controlling weight to Dr. Shaver's opinion only to the extent the opinion supports the finding that Plaintiff could perform sedentary work.  (Pl. Br. 11).  Plaintiff implies that in according controlling weight to only a portion of the opinion the ALJ picked and chose those parts of the opinion favorable to his decision, and abstracted pieces of the evidence favorable to his decision while ignoring the evidence as a whole.  Id. (citing Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004); Lee v. Barnhart, 117 Fed. Appx. 674, 678 n.2 (10th Cir. 2004); O'Connor v. Shalala, 873 F. Supp. 1482, 1491 (D. Kan. 1995); Jones v. Sullivan, 804 F. Supp. 1398, 1406 (D. Kan. 1992); and Claasen v. Heckler, 600 F. Supp. 1507, 1511 (D. Kan. 1985)).

Next, Plaintiff argues it was error for the ALJ to discount Dr. Shaver's opinion on the basis that Plaintiff was referred to him "by her representative in connection with her disability claim, not because of problematic symptoms."  (Pl. Br. 11) (quoting (R. 23)).  She argues this is so for three reasons:  (1) Because that finding is factually incorrect;

(2) Because "an ALJ's assertion that a family doctor naturally advocates his patient's cause is not a good reason to reject his opinion," (Pl. Br. 11-12) (quoting McGoffin v. Barnhart, 288 F.3d 1248, 1253 (10th Cir. 2002)); and (3) Because an ALJ may not base rejection of a treating source opinion on the ALJ's own speculation.  (Pl. Br. 12).

In her third allegation of error, Plaintiff asserts that the "ALJ's primary complaint with Dr. Shaver's opinion is the part that indicates plaintiff would miss two or more days of work a month due to symptoms."  Id. (citing (R. 226)).  She asserts that the "ALJ faulted Dr. Shaver for 'uncritically accept[ing] as true most, if not all, of what the claimant reported,'" and argues that Dr. Shaver is qualified as a rheumatologist and "is best qualified to assign limitations based on his interpretation of the objective medical evidence and plaintiff's subjective complaints."  Id.  She concludes her argument, "If Dr. Shaver thinks plaintiff would miss work due to her symptoms, then the ALJ should have agreed and not discounted his opinion for specious reasons.  As a matter of fact, what Dr. Shaver opined is exactly what happened with plaintiff's last job."  Id.

The Commissioner addresses each of Plaintiff's arguments regarding evaluation of Dr. Shaver's opinion.  (1) He acknowledges that an ALJ "may not 'pick and choose through an uncontradicted medical opinion,' . . . [but asserts that] Dr. Shaver's opinions . . . were not uncontradicted."  (Comm'r Br. 16-17) (quoting Haga v. Astrue, 482 F.3d 1205, 1208 (10th Cir. 2007)).  He asserts that the ALJ explained his bases for rejecting most of Dr. Shaver's opinion while accepting one segment of it.  Id. at 17.  (2) He argues

8

that the ALJ's finding that Plaintiff was referred to Dr. Shaver in connection with her disability claim rather than in response to specific medical problems is but one sentence of a lengthy analysis regarding Dr. Shaver's opinion, and nonetheless reflects on "Plaintiff's credibility and her ability to perform sedentary work during an eight-hour workday."  (Comm'r Br. 17).  Finally, (3) the Commissioner recognizes Plaintiff's argument that the ALJ's "primary complaint" is with Dr. Shaver's assessment of a need to miss two or more days of work a month.  Id.  However, he points to the ALJ's statement that Dr. Shaver merely accepted Plaintiff's subjective allegations and to the ALJ's finding that Dr. Shaver's opinion was not supported by any objective evidence, and argues that these facts constitute proper bases to discount the opinion, particularly where the ALJ has previously discounted the credibility of Plaintiff's allegations of symptoms.  Id. at 17-18.

A.      **Standard for Evaluating Treating Source Opinion**

Plaintiff's brief properly summarizes the law regarding treating source opinions. (Pl. Br. 9-10).  As Plaintiff points out, the opinions of physicians or psychologists who have treated a claimant for a period of time (treating sources)[1] are generally given more

---

[1]The regulations define three types of "acceptable medical sources:"

"Treating source:"  an "acceptable medical source" who has provided the claimant with medical treatment or evaluation in an ongoing treatment relationship.  20 C.F.R. §§ 404.1502, 416.902.

"Nontreating source:"  an "acceptable medical source" who has examined the claimant, but never had a treatment relationship.  Id.

"Nonexamining source:"  an "acceptable medical source" who has not examined the claimant, but provides a medical opinion.  Id.

weight than the opinions of those who have merely examined the claimant (nontreating sources), or of those who formed an opinion only from reviewing the medical record (nonexamining sources).  (Pl. Br. 9) (citing Robinson, 366 F.3d at 1084).  The opinion of a nontreaing source is generally entitled to less weight than that of a treating source, and the opinion of a nonexamining source who has never seen the claimant but formed an opinion after simply reviewing the records is generally entitled to the least weight.  Id.; see also Doyal v. Barnhart, 331 F.3d 758, 762-63 (10th Cir. 2003); and Talbot v. Heckler, 814 F.2d 1456, 1463 (10th Cir. 1987) (citing Broadbent v. Harris, 698 F.2d 407, 412 (10th Cir. 1983), Whitney v. Schweiker, 695 F.2d 784, 789 (7th Cir. 1982), and Wier ex rel. Wier v. Heckler, 734 F.2d 955, 963 (3d Cir. 1984)).

A treating source opinion about the nature and severity of a claimant's impairments must be given controlling weight if it is both well supported by clinical and laboratory diagnostic techniques, and "not inconsistent" with the other substantial evidence in the case record.  (Pl. Br. 9) (citing Castellano v. Sec'y of Health & Human Servs., 26 F.3d 1027, 1029 (10th Cir. 1994); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2)); see also Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003); and Soc. Sec. Ruling (SSR) 96-2p, West's Soc. Sec. Reporting Serv., Rulings 111-15 (Supp. 2011) ("Giving Controlling Weight to Treating Source Medical Opinions").

If the treating source opinion is not given controlling weight, the inquiry does not end.  (Pl. Br. 9); see also Watkins, 350 F.3d at 1300.  A treating source opinion is "still

entitled to deference and must be weighed using all of the factors provided in 20 C.F.R.

§ 404.1527 and 416.927."  Watkins, 350 F.3d at 1300.  Those factors are:  (1) the length

of treatment relationship and frequency of examination; (2) the nature and extent of the

treatment relationship, including the treatment provided and the kind of examination or

testing performed; (3) the degree to which the physician's opinion is supported by

relevant evidence; (4) consistency between the opinion and the record as a whole;

(5) whether or not the physician is a specialist in the area upon which an opinion is

rendered; and (6) other factors brought to the ALJ's attention which tend to support or

contradict the opinion.  (Pl. Br. 10) (citing Watkins, 350 F.3d at 1300-01); see also 20

C.F.R. §§ 404.1527(d)(2-6), 416.927(d)(2-6); and Drapeau v. Massanari, 255 F.3d 1211,

1213 (10th Cir. 2001).

After considering the regulatory factors, the ALJ must give reasons in the decision

for the weight he gives the treating source opinion.  Watkins, 350 F.3d at 1301.  "Finally,

if the ALJ rejects the opinion completely, he must then give 'specific, legitimate reasons'

for doing so."  Id.  (citing Miller v. Chater, 99 F.3d 972, 976 (10th Cir. 1996) (quoting

Frey v. Bowen, 816 F.2d 508, 513 (10th Cir. 1987)).

### B.    The ALJ's Consideration

In analyzing Plaintiff's impairments and their severity at step two of the sequential

process, the ALJ acknowledged that Plaintiff has a history of lupus, right hip pain, and

low back pain.  (R. 16).  He stated that Plaintiff's "[m]edical treatment was minimal until

11

she was referred by her attorney[2] to a rheumatologist in May, 2005[3]." He noted that the

rheumatologist to whom Plaintiff was referred was Dr. Shaver. (R. 16).

In his summaries of the medical evidence, the ALJ referred liberally to Dr.

Shaver's treatment notes:

> The claimant was referred by her representative to rheumatologist Timothy
> Shaver, M.D., on May 25, 2007, reporting a history of lupus. Hip X-rays
> were essentially negative, but there was evidence of early osteoarthritis in
> the right knee. Dr. Shaver noted skin changes attributed to lupus and stated
> that the claimant's discomfort in the hands and feet could be related to
> lupus. He prescribed Plaquenil 200. The claimant's right knee was tender
> and had crepitus, but was not significantly swollen. The claimant
> repeatedly declined recommendations for knee injections. She was
> diagnosed with fibromyalgia on August 27, 2007 after testing positive on 18
> out of 18 tender points. Her symptoms did not significantly improve with

---

[2]In arguing that the ALJ's decision is not supported by substantial record evidence, Plaintiff points out that the individual to whom the ALJ refers as Plaintiff's "attorney" both at page 16 and at page 20 in the decision was actually a non-attorney representative. (Pl. Br. 5). Plaintiff is correct, and the court notes that the ALJ recognized that fact repeatedly in his decision. (R. 14, 16, 23). Moreover, in the first paragraph of his decision, the ALJ introduced Plaintiff's representative as "Lenora L. Fairbank, a non-attorney representative." (R. 14). On page 16, after stating Plaintiff was referred by her attorney, in the next paragraph the ALJ stated that the "claimant was referred by her representative to rheumatologist Timothy Shaver, M.D., on May 25, 2007." (R. 16). Later, in his analysis of Dr. Shaver's opinion, the ALJ confirmed his understanding that Plaintiff "was referred to Dr. Shaver by her representative." (R. 23). The court finds merely typographical errors and no prejudice in the ALJ's reference to Plaintiff's representative as an attorney.

[3]This is another typographical error. Plaintiff's first visit with Dr. Shaver was May, 2007, and the ALJ provided the correct date in the very next paragraph as noted in footnote 2 above. (R. 16); see also, (R. 322). As Plaintiff points out, the Index erroneously refers to Dr. Shaver's opinion as "dated 11/29/2005," although it was actually dated November 29, 2007. (Pl. Br. 10). In his analysis of the opinion evidence, the ALJ identified the correct dates. (R. 22).

Plaquenil, causing Dr. Shaver to attribute them primarily to fibromyalgia (exhibit 10F) [(R. 314-24)].

(R. 16-17).

During his initial evaluation on May 25, 2007, Dr. Shaver also noted crepitus in the right knee, but stated that the claimant had normal range of motion in the upper and lower extremities and very little difficulty using the fingers and toes (despite the claimant's reports to the contrary). There was no definite evidence of synovitis although the claimant's hands were puffy. There was normal range of motion in the cervical spine, but decreased flexion and extension of the lumbar spine. Straight leg raising was negative. The claimant was ambulatory with a cane and reflexes were intact (exhibit 10F/7, 9) [(R. 320, 322)]. During an examination on November 26, 2007, the claimant had no synovitis in the fingers, toes, or wrists and no paresthesia in the hands. Pinch strength was mildly diminished (exhibit 10F/5) [(R. 318)]. On January 28, 2008, Dr. Shaver noted that the claimant had mildly positive straight leg raising on the right, but reasonable range of motion in the spine (exhibit 10/4) [(R. 317)]. Dr. Shaver stated on March 27, 2008 that the claimant had good mobility in the shoulders, elbows, wrists, and small joints of the hands with no synovitis, although the left wrist was mildly swollen and there was tenderness in the shoulders. The claimant's reported weakness in the hip girdle region was not substantiated objectively (exhibit 10F/3) [(R. 316)].

(R. 17-18).

The ALJ applied the correct legal standard to evaluating Dr. Shaver's opinion.

First, he summarized Dr. Shaver's opinion, and explained why he did not give it

controlling weight:

As for the opinion evidence, rheumatologist Timothy S. Shaver, M.D., completed a medical source statement on November 29, 2007 stating that he had treated the claimant for lupus and fibromyalgia since May, 2007 and had seen her every 2 to 3 months since that date. He stated that the claimant was subject to widespread myofascial pain aggravated by activity and causing tenderness, muscle spasm, paresthesias most prominent in the hands, and impaired sleep, but no limitation of spinal motion, and

13

exacerbated by depression, anxiety, and psychological factors.  Dr. Shaver
stated that the claimant's symptoms would frequently interfere with
concentration and attention, and kept the claimant from standing and
walking longer than 2 hours of an 8-hour workday or sitting longer than 4
hours of an 8-hour workday, as well as necessitating position changes every
30 to 45 minutes.  He recommended sedentary lifting restrictions, but
opined that the claimant would have to take unscheduled 10 minute breaks
once or twice a day and could only rarely stoop and bend.  He also stated
that the claimant could not grasp or turn items with her hands or reach more
than 10% of a day or engage in fine manipulation more than 25% of an
average work day and would be expected to miss 2 days of work each
month due to her symptoms (exhibit 1F) [(R. 221-26)].  Dr. Shaver repeated
these recommendations on August 5, 2008 (exhibit 11F) [(R. 325-28)].

In this case, Dr. Shaver's opinion is not supported by his objective findings,
which showed crepitus but no swelling in the knee.  The claimant had
normal range of motion in the upper and lower extremities and very little
difficulty using the fingers and toes.  There was no synovitis although the
claimant's hands were puffy.  There was no paresthesia in the hands.  Pinch
strength was only mildly diminished.  There was normal range of motion in
the cervical spine and reasonable range of motion in the lumbar spine.
Straight leg raising was negative.  The claimant was ambulatory with a cane
and reflexes were intact (exhibit 10F) [(R. 314-24)].  Dr. Shaver apparently
relied quite heavily on the subjective report of symptoms and limitations
provided by the claimant, and seemed to uncritically accept as true most, if
not all, of what the claimant reported.  Yet, as explained elsewhere in this
decision, there exist good reasons for questioning the reliability of the
claimant's subjective complaints.  Because Dr. Shaver's opinion is not
supported by his objective findings, it has not been given controlling weight
except in his recommendation for sedentary work restrictions, which is
supported by the evidence.

Since it cannot be entitled to controlling weight, Dr. Shaver's opinion must
be analyzed to determine the appropriate weight that can be given to this
opinion as noted in Watkins v Barnhart, 350 F 3d 1297, 1300 (10th Cir.
2003).

(R. 22-23).  Next, he explained the weight he accorded to Dr. Shaver's opinion, and stated

his reasons for assigning that weight:

14

Dr. Shaver is a rheumatologist who has seen the claimant every 2 to 4 months.  His treatment records are well documented, [(1)] but do not reflect significant limitations in functioning.  There is [(2)] no evidence that the claimant could not complete an 8-hour workday at a sedentary exertional level prior to June 1, 2008.  The claimant was referred to Dr. Shaver by her representative in connection with her disability claim, [(3)] not because of problematic symptoms.  Dr. Shaver's objective findings are largely consistent with those of consultative medical sources, [(4)] but his conclusions are not supported by these findings.  Therefore, his opinion has been given controlling weight, as noted above, only in support of sedentary work restrictions.  It has not been given substantial weight in any other area.

(R. 23) (numbering added for ease in identifying the ALJ's reasons for discounting Dr. Shaver's opinion).

## C.    Analysis

As the ALJ found, Dr. Shaver first submitted a medical source statement of his opinion regarding the nature and severity of Plaintiff's impairments and the limitations presented by those impairments on November 29, 2007.  (R. 22-23) (citing Ex. 1F (R. 221-26)).  The ALJ found that "Dr. Shaver repeated these recommendations on August 5, 2008."  (R. 23) (citing Ex. 11F (R. 325-28)).  Plaintiff asserts that "the last page of the second opinion does not appear in the record," and that "[t]he ALJ made no mention of this omission, and presumably the final page was omitted when the transcript for this court was compiled."  (Pl. Br. 10).  In stating this information, Plaintiff's brief insinuates that the ALJ erred, and the court will address that insinuation before addressing the three errors alleged specifically.  A comparison of Exhibit 1F with Exhibit 11F reveals that much of the second medical source statement is identical to the first.  In fact, it appears

15

that when Dr. Shaver prepared the second statement he copied the first three pages of his first medical source statement, and merely noted changes and added additional information.  Compare, (R. 222-26), with (R. 326-28).

The only differences between the two medical source statements appear in Dr. Shaver's response to questions 5 "c" and "d" on page two of the statement.  Question 5c states, "If nerve root compression is thought to be present in the lower back, please specify straight leg raising (SLR) findings (degrees)."  On the first statement, Dr. Shaver inserted "N/A" (R. 223), whereas on the second statement in August 2008, Dr. Shaver scratched out the previously inserted "N/A," and inserted "Not formally measured."  (R. 327).  Question 5d is a two part questions which states, "Please specify the results of any imaging studies (MRI, CT, myelography) that are compatible with nerve root compression," and "Has the patient had surgery since the above imaging studies?"  On the first statement, Dr. Shaver inserted "N/A," with regard to nerve root compression, and checked the "No" block with regard to surgery."  (R. 223).  On the second statement, Dr. Shaver scratched out the previously inserted "N/A" with regard to nerve root compression, and inserted "MRI on 6/20/08 shows stenosis at L5-S1 (R) neural foramen." (R. 327).  With regard to surgery, on the second statement Dr. Shaver left the "No" block checked, and also inserted "Referred to a surgeon."  The record reflects no other difference(s) between Dr. Shaver's two medical source statements.

Although Plaintiff asserts that the last page is missing from the second medical source statement, in actuality the second statement does not include pages which would equate to the last two pages of the first medical source statement. Compare, Ex. 1F (R. 222-26) (medical source statement pages numbered 1-5); with Ex. 11F (R. 326-28) (medical source statement pages numbered 1-3). However, Plaintiff's explanation for this discrepancy is not supported by the evidence. In the numbering provided by the Commissioner in identifying the exhibits in his electronic files before the case was numbered for this court's use, each page of Exhibit 11F was identified and numbered in the upper right corner of the page as "Page 1 of 4," through "Page 4 of 4." (R. 325-28). There is no break in the numbering in the exhibit, and the numbering provided, in stating "Page _ of 4," does not leave room for an assertion that Exhibit 11F as it appeared in proceedings before the Commissioner consisted of either five or six pages. Therefore, it is clear that Exhibit 11F consisted of only 4 pages when it was first admitted into the Commissioner's electronic case record. If this was error, Plaintiff was given the opportunity to correct the error at the hearing, and she did not do so. The record reveals that at the administrative hearing exhibits 1F through 12F were admitted after Plaintiff stated she had no objection to any exhibits in the case file. (R. 30). Plaintiff has not shown error in the record provided to the court, either. The last page of Exhibit 11F (R. 328) and the first page of Exhibit 12F (R. 329) are consecutively numbered in the "Court Transcript Index;" in the "Medical Records," "Exhibits" list; and in the administrative

17

record.  (Doc. 9) (Attach. 1 & Attach. 8, Index1); (R. 328-29).  Plaintiff asserts that "presumably" the allegedly missing page was "omitted when the transcript for this court was compiled," but she did not specifically allege error in the record, nor did she make a motion to correct the record or a motion to remand for the Commissioner to correct the record.  Perhaps more importantly, she does not even attempt to show that the "missing" page(s), if produced, would be different than the last two pages of Dr. Shaver's first statement.  And, she does not argue that the "error," if error were shown, prejudiced her.

Finally, to the extent that Plaintiff may be alleging that the differences on the second page of Dr. Shaver's second medical source statement require remand because they were not mentioned by the ALJ, the court finds remand is not necessary.  The ALJ's discussion of Dr. Shaver's opinions quoted above is contained within his assessment of Plaintiff's RFC for the period "[p]rior to June 1, 2008, the date the claimant became disabled."  (R. 19) (RFC assessment (R. 19-24)).  As discussed above, Dr. Shaver's second medical source statement was dated August 5, 2008, after Plaintiff injured her back in June 2008, and the only changes reflected in the form relate to the MRI performed on June 20, 2008, also after Plaintiff injured her back.  These changes are simply not relevant to the time period under consideration, and the ALJ's failure to specifically discuss them is not error.  As to the limitations in the second statement which were relevant to the period at issue here, the ALJ was correct to find that Dr. Shaver repeated his first recommendations in the second medical source statement.

18

The court now returns to the three allegations of error explicitly raised by Plaintiff. In the first allegation, Plaintiff implied that the ALJ picked and chose within Dr. Shaver's opinion using only those parts favorable to the decision, and abstracted pieces of the evidence favorable to the decision, all while ignoring the evidence as a whole. Although the law is clear that an ALJ may not "pick and choose through an uncontradicted medical opinion, taking only those parts that are favorable to a finding of nondisability," Haga, 482 F.3d at 1208 (citing Robinson, 366 F.3d at 1083), as the Commissioner argues, Dr. Shaver's opinion is not uncontradicted. Moreover, as quoted, above, the ALJ summarized Dr. Shaver's opinion and Dr. Shaver's treatment notes, and explained which parts of Dr. Shaver's opinion were contradicted, how they were contradicted, and the weight he accorded Dr. Shaver's opinion. This is not error.

The cases cited by Plaintiff do not require a different result. In Robinson, the court noted that the ALJ "failed to articulate the weight, if any, he gave [the opinion at issue], and he failed also to explain the reasons for assigning that weight or for rejecting the opinion altogether." Robinson, 366 F.3d at 1082-83. The court noted that the ALJ stated the opinion was "vague and conclusive," but that the ALJ did not say that the opinion was not well-supported, and the court explained that it was unable to ascertain how or why the ALJ found the opinion "vague and conclusive." Id. 366 F.3d at 1083. The court noted that the "ALJ clearly gave [the] opinion some weight, because he relied on it for his opinion that claimant was stable on medication." Id. Therefore, the court found error,

and stated the principle that an "ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability." Id.

This case is not like Robinson. Here, as quoted above, the ALJ summarized both Dr. Shaver's opinion and his treatment notes. Plaintiff does not argue that the summaries are erroneous, or that they did not include particular, significant, relevant facts. The court finds no material errors or misrepresentations in the summaries. Here, the ALJ applied the correct standard for weighing treating physician opinions. The first thing he decided was whether the opinion was worthy of controlling weight, and he gave his reasons for withholding controlling weight except to the extent that Dr. Shaver recommended sedentary work restrictions--because the opinion is inconsistent with Dr. Shaver's objective findings. (R. 23). Next, the ALJ explained that except for according controlling weight to the sedentary work restrictions, he would not accord substantial weight to Dr. Shaver's opinion, and he stated four reasons for discounting the opinion: (1) Dr. Shaver's treatment records do not reflect significant limitations in functioning; (2) there is no evidence that Plaintiff could not complete an 8-hour workday at a sedentary exertional level; (3) Plaintiff was referred to Dr. Shaver primarily in connection with her disability claim; and although Dr. Shaver's objective findings are largely consistent with those of consultative medical sources, (4) his conclusions are not supported by his findings. The ALJ in this case provided both the findings and the reasons the Robinson court found lacking.

The other cases Plaintiff cites are to a similar effect. The error the court found in Lee was that the ALJ relied upon the report of an agency consultant which failed to discuss a contrary opinion, and that the ALJ also failed to discuss the contrary opinion. 117 Fed. Appx. 674, 678 & n.2. In O'Connor, the court found error because the ALJ ignored the evidence as a whole, but selectively abstracted pieces of evidence favorable to his decision. 873 F. Supp. 1482 at 1491. In Jones and Claasen, the ALJ mischaracterized or ignored evidence favorable to the claimant and overemphasized evidence favorable to his decision. 804 F. Supp. 1398 at 1406; 600 F. Supp 1507 at 1511. The difference here is that Plaintiff points to no evidence which was ignored, mischaracterized, underemphasized, or overemphasized in the decision at issue.

Plaintiff next provided three reasons she believes it was error for the ALJ to discount Dr. Shaver's opinion on the basis that Plaintiff was referred to Dr. Shaver because of her disability claim rather than because of "problematic symptoms." She argues (1) that the ALJ's finding is factually incorrect, (2) that an ALJ may not reject a physician's opinion on the basis that a physician naturally advocates his patient's cause, and (3) that an ALJ may not reject a treating source opinion based upon the ALJ's own speculation. (Pl. Br. 11-12). As Plaintiff's brief suggests, one of the reasons the ALJ gave for discounting Dr. Shaver's opinion was because "claimant was referred to Dr. Shaver by her representative in connection with her disability claim, not because of problematic symptoms." (R. 23).

Prior to making the finding complained of here, the ALJ had already found that

Plaintiff saw Dr. Shaver primarily to secure evidence for her disability application:

> The claimant currently utilizes medication for high blood pressure, Propoxy for pain, Ibuprofen 800 for pain and swelling, and Abuterol inhaler for asthma (exhibit 14E) [(R. 215-17)].  She has generally denied medication side effects (exhibits 2E; 9E) [(R. 145-53, 199-205)].  Nevertheless, the claimant has not generally received the type of medical treatment one would expect for a totally disabled individual.  Although she lost her job on January 1, 2006 reportedly due to excessive absenteeism from back and hip pain and the effects of lupus, she did not seek consistent medical treatment until May, 2007, when her attorney referred her to Dr. Shaver.  This would suggest that her symptoms were not as problematic as alleged.  She did not have a history of physical therapy, epidural injections, chiropractic management, or a TENS unit in regard to back pain (exhibit 4F/1) [(R. 259)].  The claimant's cane was not prescribed and was not medically necessary (exhibit 4F/1) [(R. 259)].  She did not begin using a crutch until her back injury in June, 2008 (exhibit 13F) [(R. 331-423)].  She has utilized Hunter Health Clinic since 2005, which is a free medical clinic, showing that she had access to medical care, but chose not to pursue it.  The record suggests that the claimant saw Dr. Shaver primarily in order to generate evidence for this application and appeal, rather than in a genuine attempt to obtain relief from the allegedly disabling symptoms.

(R. 20).

With the exception of the first two sentences, Plaintiff quotes this paragraph in her

brief, and it appears to be the basis for her argument that the ALJ's decision is not

supported by substantial evidence.  (Pl. Br. 4-7).  Therefore, the court will address

Plaintiff's allegations regarding this paragraph before continuing to address the

evaluation of Dr. Shaver's opinion.  Plaintiff appears to take issue with the evidentiary

support for most of the factual findings in this paragraph, and the court will address each

argument.  In this regard, it is important to note two factors which must be considered.

First, the court may not reweigh the evidence or substitute its judgment for that of the Commissioner.  Frantz v. Astrue, 509 F.3d 1299, 1300 (10th Cir. 2007); Hackett, 395 F.3d at 1172; White, 287 F.3d at 905.  The starting point in the court's review is the rationale presented in the Commissioner's decision and not what another party, or even the court, might view as a "proper" weighing of the evidence.  42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").

Second, Plaintiff must demonstrate error in the ALJ's rationale or finding, the mere fact that there is evidence which might support a contrary finding will not establish error in the ALJ's determination.  "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.  We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo."  Lax, 489 F.3d at 1084 (citations, quotations, and bracket omitted); see also, Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966).  Therefore, it is insufficient for Plaintiff merely to show that the evidence might support a different finding, she must show that the ALJ's finding is erroneous, or is contrary to the record evidence.

The ALJ cited record evidence in support of his findings that Plaintiff takes medications and that she has denied side effects from medication.  And, Plaintiff makes

no attempt to contest those findings.  Nor does Plaintiff contest the findings that her cane was not prescribed or medically necessary, that she did not use a crutch until her back injury in June 2008, and that she used a free medical clinic, Hunter Health Clinic, since 2005, showing that she had access to medical care.

Plaintiff appears to admit that she was laid off from her job in January 2006, and she quotes her hearing testimony for the proposition that she was laid off because she missed too many days of work each month because her legs, her back, and her right hip were hurting her, her eyesight was real blurry, and she had really bad headaches.  (Pl. Br. 5-6) (citing (R. 36)).  Yet, she objects to the ALJ's characterization that "her last job ended 'reportedly due to excessive absenteeism,'" and argues that "[t]here is nothing in the record to warrant the ALJ's apparent skepticism about how plaintiff lost her last job." (Pl. Br. 5-6).  To the best of the court's comprehension, this is an argument about nothing because the ALJ found Plaintiff's allegations of disabling symptoms prior to June 1, 2008 are not credible, and Plaintiff did not allege that the credibility finding is erroneous.  It is not surprising that the ALJ's characterization of Plaintiff's testimony might reveal a hint of skepticism.  Moreover, the point of the sentence at issue is that if Plaintiff lost her job due to excessive absenteeism caused by an inability to work because of symptoms; then such severe, disabling symptoms should have caused Plaintiff to seek more consistent medical treatment even before her representative referred her to Dr. Shaver in May, 2007. Contrary to Plaintiff's assertion, this is record evidence supporting the ALJ's skepticism.

24

Plaintiff next objects to the ALJ's finding that Plaintiff's representative[4] referred Plaintiff to Dr. Shaver.  Plaintiff points to Dr. Shaver's initial treatment note which indicates that he was "seeing [Plaintiff] in consultation for Dr. Deanna Snyder and Lenora Fairbank from Hunter Health to evaluate [Plaintiff] for lupus and for recommendation for continued treatment."  (R. 322).  As Plaintiff acknowledges, Lenora Fairbank was her representative before the ALJ.  (Pl. Br. 5); (R. 14).  Moreover, Dr. Shaver specifically suggested that Ms. Fairbank had referred Plaintiff for his care.  (R. 322).  The fact that Plaintiff was referred for treatment by her disability representative suggests that she was seeking to document a record of disability rather than primarily seeking relief for symptoms.  Dr. Shaver's apparent assumption that Ms. Fairbank was Plaintiff's physician is irrelevant to the ALJ's finding.  The ALJ might properly assume that if severe symptoms were an issue, Plaintiff would have sought an earlier referral without direction from her representative.  Plaintiff's argument that she was also referred by her primary care physician does not preclude the ALJ's understanding, because even when a disability representative seeks referral, the referral will usually require action by the primary physician.  The fact that Plaintiff later developed an extended treatment relationship with Dr. Shaver does not change the inference which might properly be drawn from the fact that the referral was recommended in the first instance by the disability representative.

---

[4]In the paragraph at issue, the ALJ referred to the representative as plaintiff's "attorney," but in footnote 2 above, the court has already addressed this issue and found no prejudicial error.

Plaintiff argues that despite the ALJ's finding that she has not received the treatment one would expect for a totally disabled individual, she has received treatment by Dr. Shaver, a rheumatologist, who treats lupus and fibromyalgia and who did not prescribe a TENS unit or epidural injections.  (Pl. Br. 4).  This argument misses the point of the decision.  The ALJ was not suggesting that Plaintiff should have had <u>different</u> treatment.  Rather, the sense of the ALJ's statement was that before seeing Dr. Shaver, Plaintiff was not seeking the extensive treatment one would expect for an individual who alleges disability.  Moreover, the ALJ's reference to no treatment by a TENS unit or by epidural injections "in regard to back pain," contains a citation to Exhibit 4F/1, and in context is clearly a reference to Dr. Henderson's statements in Exhibit 4F at page 1 that Plaintiff reported a history of low back pain, and that there was "no history of physical therapy, MRI, epidural injections, chiropractic management, or TENS unit."  (R. 259).

Plaintiff explains her failure to seek consistent medical treatment until May 2007 by suggesting that she used Hunter Health Clinic, but that when she did not obtain relief from the general practitioners at Hunter Health she sought out Dr. Shaver, a specialist. (Pl. Br. 7).  Although this statement might provide an alternative explanation why Plaintiff sought treatment with Dr. Shaver in May 2007, it says nothing regarding her failure to seek consistent treatment <u>before</u> that time.  Finally, Plaintiff characterizes this finding as the ALJ's improper reliance upon a failure to pursue treatment without first considering whether such refusal was justified under the <u>Frey</u> test.

26

However, the Frey test is not required in situations such as here, where treatment was not prescribed or recommended, but where the ALJ was simply considering "what attempts plaintiff made to relieve [her symptoms] . . . in an effort to evaluate the veracity of plaintiff's contention that [her symptoms were] so severe as to be disabling." Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000) (citing Hargis v. Sullivan, 945 F.2d 1482, 1489 (10th Cir. 1991); Luna v. Bowen, 834 F.2d 161, 165-66 (10th Cir. 1987)); see also Allen v. Apfel, No. 99-3249, 2000 WL 796081 (10th Cir. June 21, 2000); Billups v. Barnhart, 322 F. Supp. 2d 1220, 1226 (D. Kan. 2004).

Here, the ALJ was not suggesting that Plaintiff failed to follow prescribed or recommended treatment, in fact, he noted that Plaintiff received additional treatment when she was referred to Dr. Shaver in May, 2007.  Rather, the ALJ was concerned that Plaintiff's symptoms were not as severe as she alleged because she sought and received little consistent medical treatment before she was referred to Dr. Shaver.  This is a factor upon which the ALJ properly relied in evaluating the credibility of Plaintiff's allegations. Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995); Wiley v. Chater, 967 F. Supp. 446, 451 (D. Kan. 1997).

As the discussion above indicates, the ALJ's finding that "claimant was referred to Dr. Shaver by her representative in connection with her disability claim, [and] not because of problematic symptoms" (R. 23) is not "factually incorrect" as alleged by Plaintiff, but is supported by substantial record evidence.  Contrary to Plaintiff's further

27

allegations in this regard (Pl. Br. 11-12), the ALJ did not assert that Dr. Shaver (or any other family doctor) naturally advocates his patient's cause. The decision reveals no such statement. Moreover, the ALJ did not reject Dr. Shaver's opinion based upon mere speculation, but as discussed his finding is supported by substantial record evidence.

In her final argument regarding the ALJ's weighing of Dr. Shaver's opinion, Plaintiff asserts that the ALJ's "primary complaint" with the doctor's opinion was that he opined Plaintiff would miss two or more days of work in a month. (Pl. Br. 12). Although the ALJ included this factor in his summary of Dr. Shaver's opinion (R. 22-23) ("would be expected to miss 2 days of work each month due to her symptoms"), and this factor, if accepted, would require a finding of disability; there is simply no indication in the decision under review that this factor was the ALJ's "primary complaint," or that it was more prominent than any other factor in evaluating Dr. Shaver's opinion. Moreover, this factor is not the only factor in Dr. Shaver's opinion which by itself would require a finding of disability if accepted. Dr. Shaver also opined that Plaintiff cannot sit for more than four hours in a workday, and would require additional, unscheduled ten minute breaks once or twice each day. Either of these limitations, if accepted, would require a finding of disability, but there is no indication in the decision that the ALJ focused "primarily" on any one limitation suggested by Dr. Shaver (other than the sedentary work restrictions). Plaintiff notes that Dr. Shaver is a board-certified specialist in rheumatology who is better qualified than anyone else in this case to assign limitations. (Pl. Br. 12). He

28

concludes his argument by stating, "If [Dr. Shaver] thinks plaintiff would miss work due to her symptoms, then the ALJ should have agreed and not discounted his opinion by specious reasons."  The court has considered each reason suggested by Plaintiff, and has not found any to be specious or unsupported.  Moreover, Plaintiff's argument ignores the fact that it is the ALJ's <u>duty</u> to weigh the medical opinions.  The regulations require that a treating source opinion must be accepted by an ALJ and may not be discounted (it must be given controlling weight) only in those situations in which the opinion is both well-supported by medically acceptable clinical and laboratory diagnostic techniques, and "not inconsistent with the other substantial evidence in" the case record.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  However, as discussed above, the ALJ specifically considered whether Dr. Shaver's opinion must be given controlling weight in this case, and he concluded that the recommendation for sedentary work restrictions must be given controlling weight but that no other portion of Dr. Shaver's opinion was worthy of even substantial weight.  (R. 23).  The ALJ explained his evaluation, and gave reasons for that evaluation.  Those reasons are supported by substantial record evidence, and Plaintiff has not shown error in the ALJ's evaluation.

## III.   Function-By-Function Assessment

Plaintiff also argues that the ALJ failed to assess her individual functional limitations, but merely made a summary conclusion that she can perform the full range of sedentary work.  (Pl. Br. 7-8).  Plaintiff quotes SSR 96-8p for the proposition that an ALJ

must make a function-by-function assessment of Plaintiff's capabilities before expressing RFC in terms of the exertional categories such as "sedentary."  Id. at 8.  She then asserts that the "RFC below does not limit plaintiff function-by-function, but only generally limits her to sedentary work," and she argues that "[l]eaving out how long plaintiff can stand or how much she can lift, the very two functions that distinguish one exertional category from another in the regulations, is not the type of function-by-function assessment required by SSR. 96-8p."  Id.

The Commissioner issued SSR 96-8p "[t]o state the Social Security Administration's policies and policy interpretations regarding the assessment of residual functional capacity (RFC) in initial claims for disability benefits."  West's Soc. Sec. Reporting Serv., Rulings 143 (Supp. 2011).  The Ruling explains that assessment of RFC involves a function-by-function consideration of each work-related ability before expressing the RFC in terms of the exertional categories of "sedentary," "light," and so forth.  Id. at 143, 145-46.  Failure to perform a function-by-function assessment may result in an improper finding at step four regarding plaintiff's ability to perform her past relevant work as she actually performed it.  Id.  Moreover, because certain occupations do not require the capacity to meet all the strength demands of the full range of work in a particular exertional category, a failure to do a function-by-function assessment may result in improper findings at step four regarding plaintiff's ability to perform her past relevant work as it is generally performed in the national economy or at step five

30

regarding plaintiff's ability to perform other work in the national economy.  Id. at 145-46

(also see examples 1-3, p. 146).

Here, Plaintiff appears to be focusing on the ALJ's statement of his RFC

assessment in finding number five (R. 19) ("claimant had the residual functional capacity

to perform the full range of sedentary work"), rather than focusing on the analysis upon

which the ALJ based his RFC assessment.  (R. 19-24).  With regard to the two functions

Plaintiff specifically suggests were left out of the ALJ's RFC assessment--standing and

lifting--the court notes that the decision includes the ALJ's analysis:

> prior to June, 2008, the claimant did not have any injuries or impairments of
> a catastrophic or disabling nature.  Lupus symptoms were primarily sun
> intolerance and skin lesions.  Physical examinations failed to reveal any
> significant problems with ambulation, sitting, bending, grasping or reaching
> despite the claimant's use of a cane, which had not been prescribed.  Due to
> a combination of back and (nonsevere) knee pain, obesity, and joint pain
> attributed to lupus and/or fibromyalgia, there are some reasonable
> limitations on what the claimant is capable of physically performing, and
> the entire world of work is not open to the claimant.  These limitations have
> been accounted for in the determination of the claimant's residual
> functional capacity for the time period prior to June 1, 2008, which
> restricted the claimant to lifting no more than 10 pounds occasionally and
> only nominal weight frequently and standing and/or walking no more than 2
> hours of an 8-hour workday.

(R. 22) (emphasis added).  The ALJ clearly made a function-by-function analysis of

standing and lifting.  The court notes that the quoted paragraph is not the only instance in

which the ALJ considered and discussed functional limitations.  Such functional analysis

occurs throughout the RFC assessment regarding finding number five.  One instance of

such analysis was quoted by Plaintiff as an example of the ALJ's "specious reasoning:"

31

> The interviewing claims representative stated that when filing a request for reconsideration, the claimant walked with a limp and appeared tired and weary (exhibit 5E) [Tr. 176].  The medical evidence confirms that the claimant walked with a limp, which was a basis for sedentary work restrictions.  The claimant is also subject to a certain degree of fatigue related to fibromyalgia and lupus as well as obesity, which has also been considered in establishing sedentary work restrictions. (Tr. 22).

(Pl. Br. 6) (quoting the ALJ's decision (R. 22)).

Plaintiff, rather sarcastically, "argues that 'a certain degree of fatigue' is inconsistent with sedentary work, as naps are not allowed in the workplace."  (Pl. Br. 7).  Plaintiff is correct that naps are not allowed in the workplace--at least not outside of normal break times.  Nonetheless, the court agrees with the ALJ's suggestion that "a certain degree of fatigue" is common in the workplace, and work at the sedentary level will aggravate that fatigue less than work requiring greater exertion.  The ALJ does not suggest that Plaintiff needs to nap in the workplace or that she will be able to nap in the workplace.  Conversely, he found that Plaintiff's allegations of symptoms, including fatigue, are not credible.  Therefore, in context, he found that Plaintiff's fatigue, although present, is not as severe as she alleges, and will not be excessively aggravated by sedentary work.

The court has addressed each error alleged by Plaintiff, and finds no error in the decision at issue.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

Dated this <u>10th</u> day of February 2012, at Kansas City, Kansas.


<u>s:/ John W. Lungstrum</u>
**John W. Lungstrum**
**United States District Judge**